IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS A. PROVENZANO,    :
                         :
        Petitioner,      :
                         :
    v.                   :    1:14-cv-01672
                         :
MICHAEL WERNEROWICZ, at al. :    Hon. John E. Jones III
                         :
        Respondents.     :

## MEMORANDUM

### March 13, 2015

Petitioner Thomas A. Provenzano has filed a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  He challenges a conviction and

sentence imposed by the Court of Common Pleas of Monroe County,

Pennsylvania.  Id.  In his petition, Provenzano raised two grounds for relief: (1) his

conviction was against the weight of the evidence, and (2) there was insufficient

evidence to sustain his conviction.  Id.

In accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), and

Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), this Court issued formal notice to

Provenzano that he could either have the petition ruled on as filed but lose his

ability to file a second or successive petition, or withdraw his petition and file one

all-inclusive § 2254 petition within the one-year statutory period prescribed by the

Antiterrorism Effective Death Penalty Act ("AEDPA").  (Doc. 7).  On September

10, 2014, Provenzano returned the notice of election, indicating that he wished to proceed with his petition for writ of habeas corpus as filed. (Doc. 9). On November 30, 2012, the Respondents filed a response to Provenzano's habeas petition. (Doc. 15). Provenzano filed a traverse on October 16, 2014, rendering this matter ripe for disposition. (Doc. 17). For the reasons set forth below, the petition is denied in part and dismissed in part.

## I.   Statement of Relevant Facts

On October 14, 2009, a criminal complaint was filed against Provenzano charging him with Unlawful Contact with a Minor – Sexual Offenses, Indecent Assault – Person with Mental Disability, Indecent Assault – Person Less than 16 Years of Age, and Corruption of Minors. (Doc. 16, Ex. A). On September 9, 2010, Provenzano's trial commenced. (Doc. 19).

At trial, Robert Napoli was first called to testify. (Doc. 19, p. 14-15). Mr. Napoli testified that on September 2, 2009 he was eating at the Mount Pocono Perkins Diner. Id. at 15. Mr. Napoli was looking toward the exit door when he noticed a car pull into a parking spot with two occupants inside. Id. at 16. Shortly thereafter, Mr. Napoli noticed that the two occupants began kissing; this drew his attention since he "found that to be inappropriate conduct considering [it] was a family restaurant." Id. at 17. Initially Mr. Napoli believed that occupants were two males, but while kissing, one individual took off a baseball cap to reveal long

hair, as which point Mr. Napoli realized one occupant was a woman.  Id.  Mr. Napoli described the kissing as "a lot of movement of the head, sort of like French kissing[,]" and further elaborated that he "would consider that hot and heavy[.]" Id. at 20.

Mr. Napoli stated that the two continued to kiss, but thereafter the woman's head moved down toward the man's lap, and stayed there for roughly two minutes. Id.  The woman was sitting in the passenger seat, while the man sat in the driver seat.  Id. at 25.  The two occupants then exited the car and walked into the restaurant while holding hands.  Id. at 20.  After the two ate and exited the restaurant, a cook named Pedro informed Mr. Napoli that the girl was fourteen years old, at which point Mr. Napoli called the police.  Id. at 19.  Mr. Napoli identified Provenzano as the man involved in that incident.  Id. at 20.

On cross-examination, Mr. Napoli stated that it was a clear day, and he was approximately twenty feet from the car when he witnessed the kissing.  Id. at 21, 23.  Mr. Napoli had a direct line of sight through a glass exit door toward the parked car, although the car was slightly to the left of his line of sight.  Id. at 24. Mr. Napoli admitted that he did not see the mouths of the two individuals while they were kissing.  Id. at 25.

After Mr. Napoli testified, George Tallmadge was called to testify about the events that transpired that day.  Id. at 28.  Mr. Tallmadge stated that he was eating

at Perkins restaurant when he noticed a car pull up to the emergency exit nearby where he was seated. Id. at 29. Mr. Tallmadge noticed that two individuals in the car "started kissing passionately." Id. After kissing "for a while[,]" the woman's head "went down out of sight toward his lap for a couple minutes then lifted up." Id. The young woman was sitting in the passenger seat, while the man was sitting in the driver seat. Id. at 32. After wiping her chin and fixing her hair and glasses, the young woman exited the vehicle and entered the restaurant with the man. Id. at 29. Mr. Tallmadge testified that he viewed the events through a glass exit door, which he believed was tinted. Id. at 31-32.

Pedro Maldonado was then called to testify. Id. at 33. Mr. Maldonado testified that on September 2, 2009, he was working as a cook as Perkins restaurant in Mount Pocono. Id. at 34. Someone informed Mr. Maldonado that two individuals were kissing in a car; because it was a slow day, Mr. Maldonado "ran over" to see what was happening. Id. Mr. Maldonado saw two individuals in the car, and saw one go "down" for a couple of minutes before coming back up. Id. Thereafter, "[t]he guy wiped her then kissed her . . . passionately." Id. at 35. The two then entered the restaurant and ordered food. Id.

Mr. Maldonado could not escape the feeling that he recognized the woman. Id. When he noticed the two individuals drive to the adjoining Walmart parking lot, he followed in his car and approached the vehicle. Id. There, he noticed the

4

woman sitting on top of the man.  Id.  She was sitting face to face with the man;

the two were kissing while the man "caress[ed] her back and everything."  Id. at

36.  They continued to kiss "very passionately[,]" at which point Mr. Maldonado

banged on the car.  Id.  The man then "tossed" the woman out of the car.  Id.

Mr. Maldonado contacted the woman's mother, then returned to Perkins and

asked someone to call the police.  Id. at 36-37.  Mr. Maldonado identified the man

in the incident as Provenzano.  Id. at 37.  On cross-examination, Mr. Maldonado

admitted that he did not directly see the two individuals' mouths meeting, but

knew they were kissing from the way their head moved and the way the man

caressed the woman.  Id. at 39.

The prosecution then called Elizabeth Janes, a life skills teacher at the East

Junior High School of the Pocono Mountain School District, to testify.  Id. at 40.

Ms. Janes testified that she taught life skills to K.F., the victim in this case, from

2008 until 2009.  Id. at 41.  Ms. Janes testified that life skills "is basically a

program for individuals who have low cognitive ages and mental abilities like the

mental retardation range[.]"  Id.  She further stated that K.F. was learning reading

and math skills at a second or third grade level.  Id. at 41-42.  Ms. Janes testified

that K.F. was "mentally retarded" and had a full scale intelligence quotient of fifty.

Id. at 42-43.  Furthermore, K.F.'s "level of broad independence" was that of an

average five year old child.  Id. at 43.

After Ms. Janes testified, Olivia Szrszen, a server at Perkins, was called to the witness stand. <u>Id.</u> at 47.  Ms. Szrszen testified that on the day of September 2, 2009 she witnessed two individuals in a car kissing.  <u>Id.</u> at 48. After kissing for some time, the woman's head disappeared from view down near the man's lap.  <u>Id.</u> Ms. Szrszen stated that it appeared as though the woman was giving oral sex to the man.  <u>Id.</u>  After a moment, the woman "came back up" and the two continued to kiss "[p]assionately with tongue." <u>Id.</u> at 48-49.  Ms. Szrszen admitted that, because of the car dashboard, she did not have a direct view of what the woman was doing. <u>Id.</u> at. 51.

Next, K.F. was called to testify.  <u>Id.</u> at 52.  K.F. stated that she had known Provenzano for a long time and he had nicknamed her, among other things, "sugar lips." <u>Id.</u> at 53.  K.F. testified that on September 2, 2009, while parked outside of Perkins, she and Provenzano had kissed on the cheek and the mouth.  <u>Id.</u> at 54.  On cross-examination, K.F. stated that she had originally told the investigating detective that she and Provenzano had only kissed on the cheek that day.  <u>Id.</u> at 56. She then stated that she and Provenzano had not kissed on the mouth, but only on the cheek.  <u>Id.</u> at 56-57.  On redirect examination, K.F. admitted that her mother and stepfather had told her to say she had only kissed Provenzano on the cheek. <u>Id.</u> at 57-58.  Lastly, K.F. stated that the truth was that she and Provenzano had kissed on the mouth, but their mouths had been closed.  <u>Id.</u> at 58-59.

Next, Trooper Mark Holtsmaster was called as a witness.  Id. at 60.  Trooper

Holtsmaster, a member of the Pennsylvania State Police, testified that he had

interviewed Provenzano on September 23, 2009.  Id. at 61.  During the interview,

Provenzano admitted that "on three occasions he passionately kissed the victim.

He described passionately kissed as mouth-to-mouth contact with the use of

tongue."  Id.  Provenzano stated during the interrogation that his relationship with

K.F. had begun as an emotional connection and evolved into a physical

relationship.  Id.  Provenzano admitted to kissing K.F. in front of the Perkins

restaurant, but denied any other sexual contact.  Id. at 62.

Finally, Detective Daniel Jones of the Pocono Mountain Regional Police

Department was called to testify.  Id. at 63.  Detective Jones testified that, during a

recorded interview after having read Provenzano his Miranda rights, Provenzano

admitted to kissing K.F. on three occasions.  Id. at 64.  The jury then listened to

audio recordings of two interviews.  Id. at 68-70.  During his investigation,

Detective Jones confirmed that Provenzano was forty-eight years old at the time of

the incident, while K.F. was only fifteen years of age.  Id. at 65.  Detective Jones

acknowledged that there was no physical evidence in the case.  Id. at 74.

Before the defense put forth its case, a motion was made to dismiss the count

of indecent deviate sexual intercourse.  Id. at 75.  Although the prosecution argued

that there was enough evidence of oral sex for the jury to consider the issue, the Judge disagreed and dismissed the count.  Id. at 76-77.

Thereafter, the defense called Detective Wendy Bentzoni to testify.  Id. at 77.  Detective Bentzoni had interviewed K.F. on the day of the incident, and described K.F. as affectionate with "no awareness of personal space[.]"  Id. at 78-79.  Detective Bentzoni testified that K.F. stated Provenzano had kissed her on the cheek, but then later stated that he had kissed her on the lips and "made a move on her."  Id. at 79-80.  Detective Bentzoni stated that she "believed [K.F.] when she said they kissed" but also believed that K.F. would have said anything that Detective Bentzoni wanted her to say.  Id. at 81.  Detective Bentzoni also believed that K.F. was concerned about getting Provenzano into trouble.  Id. at 83.

Next, Debra Horn, K.F.'s mother, was called as a witness.  Id. at 83-84.  Ms. Horn testified that K.F. often climbed onto people and kissed them if she cared about them.  Id. at 84.  Ms. Horn stated that she had been present at one interview between a detective and K.F.  Id. at 86.  The detective asked K.F. is she had kissed Provenzano on the lips, to which K.F. replied "no."  Id.  Ms. Horn stated that the detective urged K.F. not to lie, at which point K.F. "would be sitting there thinking really hard about what she was supposed to say, what the detective wanted her to say."  Id.  Ms. Horn further testified that after the incident, K.F. had told her that she had only kissed Provenzano on the cheek, and nowhere else.  Id. at 87.

Lastly, the defense called Provenzano to testify. <u>Id.</u> at 100.  Provenzano stated that he has known K.F. since she was five years old and had first met her when he was dating her mother, Debra Horn.  <u>Id.</u>  He stated that when he and K.F. were parked in front of Perkins, he was on his cell phone.  <u>Id.</u> at 106.  While he was speaking on the cell phone, K.F. "was just being [herself], constantly bouncing on and off, kissing, hugging, kissing me on the forehead, kissing me on the back of the head, you know, wherever I happened to turn my head." <u>Id.</u> at 105. Provenzano further testified that K.F. had put her head in his lap in order to grab a second cell phone that was underneath Provenzano's seat.  <u>Id.</u> at 106.

Provenzano explained that, when he admitted to the police that K.F. had previously kissed him on the mouth, it was "[a] simple kiss" and they did not use tongue.  <u>Id.</u>  On cross-examination, Provenzano reiterated that that the mouth kiss was "a peck" and there "was never emotional kissing or tongue kissing or making out[,]" although he admitted that he had not told the police of any kissing on the mouth during his first interview.  <u>Id.</u> at 111-12.

After deliberations, the jury found Provenzano guilty of Indecent Assault – Person with Mental Disability, and Indecent Assault – Person Less than 16 Years of Age.  <u>Id.</u> at 159.  The jury acquitted Provenzano of all other charges.  <u>Id.</u> at 158-59.  On January 18, 2011, Provenzano was sentenced to eighteen to sixty months for the crime of Indecent Assault – Person with Mental Disability.  (Doc. 16, Ex.

A).  For the crime of Indecent Assault – Person Less than 16 Years of Age,

Provenzano was sentenced to twelve to twenty-four months imprisonment, to be

served concurrently with his other sentence.  Id.

Provenzano appealed his sentence and conviction to the Pennsylvania

Superior Court, arguing that the evidence was insufficient to sustain his

convictions, and that the trial court erred in calculating his sentence.  See, Com. v.

Provenzano, 50 A.3d 148 (Pa. Super. 2012).  After reviewing the evidence, the

Superior Court concluded that the verdict was supported by sufficient evidence,

and sustained the conviction.  Id. at 152-53.  However, the Superior Court

concluded that the trial court had erred in sentencing Provenzano, and therefore

remanded for the imposition of a new sentence.  Id. at 157-58.

On remand, the trial court sentenced Provenzano to seventeen to sixty

months imprisonment for Indecent Assault – Person with Mental Disability.  (Doc.

16, Ex. A).  The trial court concluded that Indecent Assault – Person Less than 16

Years of Age merged with the pervious count, and therefore did not impose a

sentence for that crime.  Id.  Provenzano appealed to the Superior Court, which

affirmed the sentence imposed.  Id.  On March 14, 2014, Provenzano filed a

petition for allowance of appeal with the Supreme Court of Pennsylvania, which

was denied on May 19, 2014.  Com. v. Provenzano, 92 A.3d 811 (Pa. 2014).

**II.**    <u>**Discussion**</u>

Under the AEDPA, "federal courts are to review a state court's determinations on the merits only to ascertain whether the state court reached a decision that was 'contrary to' or involved an 'unreasonable application' of clearly established Supreme Court law, or if a decision was based on an 'unreasonable determination' of the facts in light of the evidence presented." <u>Fahy v. Horn</u>, 516 F.3d 169, 189 n. 20 (3d Cir. 2008) (citing, 28 U.S.C. § 2254(d)). Any factual determinations "made by a State court shall be presumed to be correct[,]" and the petitioner bears the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A state court decision is contrary to clearly established Supreme Court law "if the state court reaches a conclusion opposite to the Supreme Court's own conclusion on a question of law or decides the case differently where the Supreme Court was confronted by a set of materially indistinguishable facts." <u>Harris v. Ricci</u>, 607 F.3d 92, 96 (3d Cir. 2010) (quoting <u>McMullen v. Tennis</u>, 562 F.3d 231, 236 (3d Cir. 2009)). "Similarly, a state court ruling is considered an 'unreasonable application' if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply." <u>Id.</u> Under this standard, the state court decision must have been

"'objectively unreasonable,' not merely wrong; 'clear error' will not suffice."

White v. Woodall, 134 S.Ct. 1697, 1702 (2014) (quoting Lockyer v. Andrade, 538

U.S. 63, 75–76 (2003)).  In applying AEDPA's standards, a district court must

review "the state courts' last reasoned opinion" on the matter.  Bond v. Beard, 539

F.3d 256, 289 (3d Cir. 2008).

### A. Sufficiency of the Evidence

First, Provenzano asserts that the evidence relied upon to convict him was

insufficient as a matter of law.  (Doc. 1).  Specifically, Provenzano contends that

there was insufficient evidence to show that he kissed the victim using tongue.  Id.

He further argues that the state court determination was contrary to clearly

established law or, in the alternative, was an unreasonable application of such law.

Id.  The Respondents reply that the evidence relied upon was sufficient to establish

that Provenzano passionately kissed the victim using tongue.  (Doc. 15).

The United States Supreme Court has held that "a federal habeas court may

review a claim that the evidence adduced at a state trial was not sufficient to

convict a criminal defendant beyond a reasonable doubt."  Herrera v. Collins, 506

U.S. 390, 401 (1993) (citing Jackson  v. Virginia, 443 U.S. 307 (1979)).  However,

"the relevant question is whether, after viewing the evidence in the light most

favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt."  Jackson, 443 U.S. at

319 (emphasis in original).  This standard "does not permit a court to make its own

subjective determination of guilt or innocence."  Id. at 320.  The Pennsylvania

standard for evaluating sufficiency of the evidence is identical to the standard

established by the United States Supreme Court.  Robinson v. Beard, 762 F.3d 316,

329 (3d Cir. 2014).

### 1. Contrary to Clearly Established Supreme Court Law

Here, the state court on appeal considered Provenzano's claim under the

correct Pennsylvania standard.  See, Provenzano, 50 A.3d at 152-53.  Because the

Pennsylvania standard for sufficiency of the evidence is identical to the federal

standard, the state court did not reach "a conclusion opposite to the Supreme

Court's own conclusion on a question of law[.]"  Harris, 607 F.3d at 96.

Furthermore, the state court did not decide this case differently than the

United States Supreme Court when "confronted by a set of materially

indistinguishable facts."  Id.  Provenzano identified only three Supreme Court

cases in support of his assertion that the state court decision was contrary to clearly

established federal law: Jackson v. Virginia, 443 U.S. 307 (1979); In re Winship,

397 U.S. 358 (1970); and Thompson v. Louisville, 362 U.S. 199 (1960).[1]  All of

---

[1] Provenzano also cites to Court of Appeals cases: United States v. Broxmeyer, 616 F.3d 120 (2d Cir. 2010); United States v. Steen, 634 F.3d 822 (5th Cir. 2011); United States v. Robinson, 430 F.3d 537 (2d Cir. 2005); and United States v. Huerta-Orozco, 272 F.3d 561 (8th Cir. 2001). Because none of these cases are United States Supreme Court cases and do not constitute binding precedent in this Circuit, none may establish the basis to grant a writ of habeas corpus. 28 U.S.C. §2254(d)(1).

these cases involved a set of facts that was materially distinguishable from the facts of this case.  Jackson involved a conviction for murder and whether the evidence established premeditation.  443 U.S. at 309.  In re Winship involved the determination of whether a minor was a juvenile delinquent.  397 U.S. at 358-59.  Finally, the conviction at issue in Thompson was loitering and disorderly conduct where there were no witnesses whatsoever to the alleged loitering.  362 U.S. at 199.  As the facts of each case were markedly different from the facts of this case, Provenzano has not established that the state court decisions were contrary to firmly established Supreme Court precedent.

     2.  *Unreasonable Application of Supreme Court Precedent*

Provenzano argues that the state court misapplied relevant case law.  (Doc. 16).  However, Provenzano only argues that the state court misapplied three state court cases: Com. v. Ricco, 650 A.2d 1084 (Pa. Super. 1994); Com. v. Capo, 727 A.2d 1126 (Pa. Super. 1999); and Com. v. Evans, 901 A.2d 528 (Pa. Super. 2006). Id. All three cases interpreted the requirements of Pennsylvania state law, particularly the indecent assault statute and its requirement that there be indecent contact between the defendant and the victim.  See, Ricco, 650 A.2d at 1086; Capo, 727 A.2d at 1127-28; Evans, 901 A.2d at 533.

Even assuming that the state court wrongly applied the three aforementioned cases to the facts at hand, such error does not rise to the level required to grant

habeas relief.  For a federal court to grant habeas relief, the state court must have

unreasonably applied clearly established Federal law.  28 U.S.C. § 2254(d)(1).

Incorrect application of state law will not suffice.  Reliance on those three cases is

not sufficient to grant habeas relief, and a thorough reading of the state court

decision provides no basis for an argument that firmly established Federal law was

unreasonably applied in this instance.

     *3.  Unreasonable Determination of the Facts*

     Finally, Provenzano argues that the state court made an unreasonable

determination of the facts "because: 1.) it did not believe some of the evidence that

was presented; or 2.) interpreted some of the evidence incorrectly and based its

ruling on the misinterpreted evidence; or 3.) IGNORED legally relevant facts that

it needed to reach the right result."  (Doc. 16).

     Provenzano was convicted of indecent assault under 18 Pa.C.S. §3126.  To

reach a conviction under that statute, the prosecution was required to establish that:

(1) Provenzano had indecent contact with K.F., (2) K.F. was less than 16 years of

age, (3) Provenzano was more than four years older than K.F., and (4) K.F. and

Provenzano were not married.  See, id. at (a)(8).  Provenzano alleges that the state

courts reached an unreasonable determination that indecent contact occurred.

(Doc. 15).  Specifically, he alleges that the prosecution failed to demonstrate a

criminal intent on his part.  Id.

First, intent, or lack thereof, is irrelevant to Provenzano's conviction.  E.g., Com. v. Seiders, 531 Pa. 592, 596 (1992) ("Intent is not an element of the offense" of indecent assault).  Thus, even if a determination of intent was erroneously reached, such error did not affect the outcome of Provenzano's case.

Second, the state court's determination of facts was not unreasonable given the evidence presented.  The Superior Court concluded that the evidence established that "Provenzano was involved in an exchange of passionate kisses with a . . . minor victim who straddled him and sat on his lap[.]"  Provenzano, 50 A.3d at 153.  Three witnesses testified that Provenzano and K.F. appeared to be kissing with tongue, and Provenzano admitted in an interview with Trooper Holtsmaster that he had kissed K.F. with tongue.  (Doc. 19, pp. 14-49, 61).  Under Pennsylvania state law, the act of inserting one's tongue into another's mouth is sufficient to establish indecent contact.  Provenzano, A.3d at 153 (citing Com. v. Evans, 901 A.2d 528 (Pa. Super. 2006)).  If believed, the testimony of even one witness was sufficient for any reasonable trier of fact to conclude that Provenzano had indecent contact with K.F.[2]

---

[2] It bears repeating that the only relevant question is whether, after viewing all evidence in the light most favorable to the prosecution, any reasonable trier of fact could have found that the prosecution established every element of the crime beyond a reasonable doubt.  Jackson, 443 U.S. at 319.  In contrast, when addressing weight of the evidence, a court examines whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."  Rainery v. Varner, 603 F.3d 189, 199 (3d Cir. 2010) (quoting Com. v. Widmer, 744 A.2d 745, 751-52 (Pa. 2000)).  Thus, whether

It is not the province of this Court to reassess the credibility of witnesses. Marshall v. Lonberger, 459 U.S. 422, 434–35 (1983).  Given the testimony provided, the state court reasonably concluded that Provenzano committed indecent assault.  As a result, a writ of habeas corpus is not warranted based of the sufficiency of the evidence.  Jackson, 443 U.S. at 319.

## B. Weight of the Evidence

Finally, Provenzano argues that the jury verdict was against the weight of the evidence.  (Doc. 1).  A challenge to the weight of the evidence requires that a court evaluate the credibility of the witnesses and evidence presented at trial.  See, Tibbs v. Florida, 457 U.S. 31, 37–38 (1982).  This necessarily involves a determination of whether certain witnesses were more credible than others, and as aforestated, this we may not do.  Indeed, the United States Supreme Court has stated that federal courts may not "redetermine [the] credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  Marshall, 459 U.S. at 434–35.  Consequently, this Court may not determine whether the testimony of certain witnesses was more or less credible than the trial court concluded.  As a result, this claim is not cognizable on federal habeas corpus review, and this Court lacks jurisdiction to review such a claim.

## C.    Certificate of Appealability

---

or not the testimony presented was credible is not a concern in analyzing sufficiency of the evidence.

Under the AEDPA, a court may not issue a certificate of appealability "unless 'the applicant has made a substantial showing of the denial of a constitutional right.'"  Slack v. McDaniel, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. 2253(c)).  Thus, the "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Id. at 484.

When a district court "denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim," a certificate of appealability should be issued if "jurists of reason" would find that: (1) it is debatable whether the petition states a valid claim for the denial of a constitutional right, and (2) it is debatable whether the district court was correct in its procedural ruling.  Id.  Provenzano has not satisfied either standard and, as a result, a certificate of appealability will not be issued.

## IV.   Conclusion

A review of the record reveals that the state court decision was not contrary to and did not involve an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  Furthermore, Provenzano's challenge to the weight of the evidence is not cognizable in a habeas petition.  The petition will therefore be dismissed in part and denied in part.

An appropriate Order will be entered.